UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

United States of America,

Plaintiff,

REPORT AND RECOMMENDATION

vs.

Noo-Din LaRose, f/k/a
Michael LaRose,

Defendant.

Crim. 05-268 (RHK/RLE)

* * * * * * * * * * * * * * * * * * *

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the following Pretrial Motions of the Defendant:

1. The Defendant's Motion to Dismiss Indictment: Insufficient Predicate Convictions.

2. The Defendant's Motion to Dismiss Indictment: Lack of Nexus with Interstate Commerce.

3. The Defendant's Motion to Suppress Statements, Admissions, and Answers.

A Hearing on the Motions was conducted on September 14, 2005, at which time, the Defendant Noo-Din LaRose appeared personally, and by Andrew H. Mohring, Assistant Federal Defender, and the Government appeared by Tracy T. Braun, Assistant United States Attorney. For reasons which follow, we recommend that the Motions be denied.

## II. Factual Background

The Defendant is charged with being a felon in possession of a firearm, in violation of Title 18 U.S.C. §§922(g)(1), and 924(e)(1) -- an offense which is said to have occurred on or about May 23, 2005. As pertinent to that charge, and to the Motions now before us, the operative facts may be briefly summarized.[1]

At the Motions Hearing, the Government elicited the testimony of Russell Traurig ("Traurig"), who is a Special Agent with the Bureau of Alcohol, Tobacco,

[1]Rule 12(e), Federal Rules of Criminal Procedure, provides that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion. Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts and law may require. See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991), cert. denied, 505 U.S. 1228 (1992); United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir. 1990).

Firearms, and Explosives ("ATFE"), and who was involved in the investigation of the events that gave rise to the pending charges. On May 23, 2005, the Defendant was involved in an assault and robbery with two (2) other men in which he allegedly "pistol whipped and robbed" a victim. Supporting Affidavit, Motion to Compel Attorney for the Government to Disclose Evidence Favorable to the Defendant, Docket No. 16, Att. 1, at ¶2. The Defendant was alleged to have had two (2) handguns in his possession during the assault, one of which was a black and silver semiautomatic pistol. Id. at ¶3, 4. On May 26, 2005, the Defendant was arrested by Cass County police with a Ruger Model P95 9mm semiautomatic pistol in his possession. Id. at ¶6. Based upon his personal and professional experience with firearms, Traurig knows that the pistol traveled in interstate commerce at some point in time, which was confirmed by an ATFE Interstate Nexus Expert. Id.

On August 15, 2005, while in custody at the Cass County Jail, Traurig arrested the Defendant on the Federal charge of possession of a firearm by a felon. Traurig transported the Defendant, by automobile, to Bemidji, but had not planned on conducting an interview during that transit. In the course of transport, the Defendant stated that he knew the whole story and insisted that he be able to tell Traurig the "real story." Traurig had not previously asked the Defendant any questions, but the

Defendant insisted that he have an opportunity to speak. Traurig read the Defendant a Miranda warning off of a card taped to his notebook and asked the Defendant if he was willing to give up his rights. The Defendant appeared to understand, and affirmatively stated that he understood his rights and was willing to answer questions. The substantive part of the interview lasted approximately five (5) minutes. Traurig's partner, Michael Aalto, was also present during the interview.

The Defendant did not ask to stop the questioning, ask for counsel, or ask to speak to anyone else. He appeared to understand the questions put to him, and gave coherent and thoughtful answers. The Defendant did ask for a cigarette, which Traurig declined to provide, as Traurig was driving the vehicle and did not want to stop. The Defendant repeated his request for a cigarette and, because Traurig needed to stop the vehicle at a gas station at the request of his partner, Traurig allowed the Defendant to have a cigarette. After the interview, Traurig continued driving the vehicle to Bemidji for the Defendant's Initial Appearance in Federal Court.

Traurig did not take notes during the actual interview, but he documented the interview afterwards in his notes, and he later drafted a report based on those notes and on his memory.

## III. Discussion

A. The Defendant's Motions to Dismiss Indictment.

1. Standard of Review. Rule 12(b), Federal Rules of Criminal Procedure, allows our consideration, at the pretrial stage, of any defense "which is capable of determination without the trial of the general issue." To withstand a Motion to Dismiss, an Indictment must allege that the Defendant performed acts which, if proven, would constitute a violation of the law under which he has been charged. United States v. Polychron, 841 F.2d 833, 834 (8th Cir. 1988), cert. denied, 488 U.S. 851 (1988). As a result, if the acts, that have been alleged in the Indictment, do not constitute a criminal offense, then the Indictment should be dismissed. See, e.g., United States v. Coia, 719 F.2d 1120, 1123 (11th Cir. 1983), cert. denied, 466 U.S. 973 (1984). In reviewing the sufficiency of an Indictment, or of any of its Counts, we are to determine whether the Indictment sufficiently sets forth the elements of the offenses alleged, where the offenses are said to have occurred, in order to place the Defendant on fair notice as to the charges against him, and whether it enables the Defendant to assert an acquittal or conviction so as to invoke his privilege against double jeopardy for a single offense. Hamling v. United States, 418 U.S. 87, 117 (1974); see also, United States v. Henderson, 415 F.3d 686, 692 (8th Cir. 2005).

"An indictment is not required to take a particular form and should not be read in a 'hyper-technical fashion,'" United States v. O'Hagan, 139 F.3d 641, 651 (8th Cir. 1998), and "[i]t should be 'deemed sufficient "unless no reasonable construction can be said to charge the offense."'" United States v. Covey, 232 F.3d 641, 645 (8th Cir. 2000), quoting United States v. Morris, 18 F.3d 562, 568 (8th Cir. 1994), quoting, in turn, United States v. Peterson, 867 F.2d 1110, 1114 (8th Cir. 1989). "We test the indictment 'solely on the basis of the allegations made on its face, and such allegations are taken as true.'" United States v. Ambrose, 405 F.3d 1109, 1116 (10th Cir. 2005), quoting United States v. Reitmeyer, 356 F.3d 1313, 1316-17 (10th Cir. 2004, quoting, in turn, United States v. Hall, 20 F.3d 1084, 1087 (10th Cir. 1994), citing United States v. Sampson, 371 U.S. 75, 78-79 (1962); see also, United States v. Farm & Home Savings Ass'n, 932 F.2d 1256, 1259 n. 3 (8th Cir. 1991), cert. denied, 502 U.S. 860 (1991), citing Boyer Motor Lines v. United States, 342 U.S. 337, 343 & n. 16 (1952).

Ordinarily, the Court's assessment is limited to the "four corners" of the Indictment, and the Court should studiously avoid the consideration of evidence from sources beyond the Indictment. United States v. Welch, 327 F.3d 1081, 1090 & n. 11 (10th Cir. 2003), citing United States v. Hall, supra at 1087. However, it is

permissible, and even desirable in certain circumstances, for the Court to examine the factual predicates of an Indictment, particularly where material facts are undisputed, in order for the Court to ascertain whether the elements of the criminal charge can be shown. Id. at n. 11, citing United States v. Hall, supra at 1087; United States v. Brown, 925 F.2d 1301 (10th Cir. 1991).

Here, the Defendant requests a dismissal of the indictment assertedly because it lacks three (3) predicate convictions for purposes of Title 18 U.S.C. §§924(e)(1). The Government has offered seven (7) predicate convictions to support the Indictment. The Defendant does not dispute that at least one (1) of the convictions offered by the Government is likely to be sufficient so as to sustain a conviction under Title 18 U.S.C. §924(g)(1). See, Memorandum in Support of Motion to Dismiss Indictment, Docket No. 35, at 2.

2. Legal Analysis.

a. Insufficient Predicate Convictions. As a preliminary matter, we find the timing of this Motion to be premature. The Armed Career Criminal Act ("ACCA") provides, in part, as follows:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on

> occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

Title 18 U.S.C. §924(e)(1).

In effect, Section 924(e) "mandates a minimum 15-year prison sentence for anyone possessing a firearm after three prior convictions for serious drug offenses or violent felonies." United States v. Strong, 415 F.3d 902, 907 (8th Cir. 2005), quoting Shepard v. United States, --- U.S. ---, 125 S.Ct. 1254, 1257 (2005).

"In determining whether a prior conviction is a violent felony for purposes of sentence enhancement under §924(e), a sentencing court may look beyond the fact of conviction and the statutory definition of the offense to other sources such as the charging documents." United States v. Mincks, 395 F.3d 826, 827 (8th Cir. 2005), quoting United States v. Griffith, 301 F.3d 880, 884-85 (8th Cir. 2002), cert. denied, 537 U.S. 1225 (2003); see also, Taylor v. United States, 495 U.S. 575, 602 (1990). Indeed, in a decision this year, the Supreme Court made plain that, "to determine whether a prior conviction is a violent felony under §924(e) following a jury trial, a sentencing court is limited to examining the 'statutory elements, charging documents,

and jury instructions.'" United States v. Strong, supra at 907, quoting Shepard v. United States, supra at 1257.

Here, the Defendant's Motion asks us to dispose of a sentence enhancing provision, which is applicable to the underlying charge of Section 922(g), prior to a finding of guilt, at a Trial on the merits. Under the law of this Circuit, what constitutes a "violent felony" is a determination routinely reserved to the Sentencing Court, which has access to a Presentence Investigation conducted by the United States Probation Office, in addition to such benefit of a factual development as allowed under the Supreme Court's "categorical approach" enunciated in Shepard. See United States v. Smith, --- F.3d ---, 2005 WL 2124101 at *5 (8th Cir., September 6, 2005)("[T]he categorization of an offense as a crime of violence is a legal question outside the purview of the Sixth Amendment."); see also, United States v. Mincks, supra at 901 ("[W]hether the prior conviction is a violent felony under the ACCA is distinctly a question of law for the court, not the jury."). "When a sentencing court uses this categorical approach, it may look beyond the fact of conviction and the statutory definition of the offense to such sources as 'the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some

comparable judicial record of this information.'" United States v. Smith, --- F.3d ---, 2005 WL 2124101 at *4 (8th Cir., September 6, 2005), quoting Shepard v. United States, supra at 1263.

While the Defendant has provided us with the transcripts of two plea Hearings -- one relating to the unauthorized use of a motor vehicle conviction,[2] and the other relating to the terroristic threats conviction -- little other documentation has been submitted, as would be the case at sentencing after Trial. According to the Defendant, neither conviction could be said to be a "violent felony," as the plea colloquy fails to document the presence of actual violence, or a serious potential risk of injury. See Defendant's Memorandum in Support of Motion to Dismiss Indictment: Insufficient Predicate Convictions, at p. 3. Notwithstanding the Defendant's argument, that the Court of Appeals for the Eighth Circuit wrongly decided United States v. Sun Bear, 307 F.3d 747, 752 (8th Cir. 2002), when it found that the Sentencing Court must "also

[2] An assault conviction was obtained at the same time as the conviction for the unauthorized use of a motor vehicle, but the Defendant appears to concede that the assault charge could be appropriately considered a "violent felony." See Defendant's Memorandum in Support of Motion to Dismiss Indictment: Insufficient Predicate Convictions, Docket No. 35, at p. 2 ("[O]nly the 3rd Degree Assault conviction likely qualifies as a violent felony under §924(e)."). In view of the fact that the Defendant struck the victim of the assault with such force as to fracture the victim's cheek bone, the presence of actual violence cannot be disputed. Transcript of Guilty Plea Hearing of September 29, 1992, at p. 14.

examine the likely consequences" of the offense's commission in order to determine if it was an offense that potentiated toward injury, Sun Bear continues to be recognized as authoritative by our Court of Appeals.

For example, as recently as its decision in United States v. Linquist, 2005 WL 2086738 at *2 (8th Cir., August 31, 2005), our Court of Appeals concluded that "operating a vehicle without the owner's consent is a crime of violence as defined by §4B1.2." See also, United States v. Johnson, 417 F.3d 990, 996-99 (8th Cir. 2005) (holding Missouri offense of "tampering by operation," which involves knowingly and unlawfully operating an automobile without the consent of the owner, is a "crime of violence" as defined by Section 4B1.2(a)(2)). As reconfirmed in United States v. Nolan, 397 F.3d 665, 666 (8th Cir. 2005), pet. for cert. filed (U.S., June 30, 2005), citing United States v. Blahowski, 324 F.3d 592, 594-95 (8th Cir. 2003), cert. denied, 540 U.S. 934 (2003), our Court of Appeals "construe[s] 'violent felony' under 18 U.S.C. §924(e)(2)(B)(ii) to have the same meaning as 'crime of violence' under U.S.S.G. §4B1.2." See also, United States v. Childs, 403 F.3d 970, 971 (8th Cir. 2005).

While the Defendant's criticism of the Court's decision, in Sun Bear, is not without supporters, the simple fact is that Sun Bear has not been overruled, its precepts have

been recently reaffirmed, see United States v. Lindquist, supra at *2, and we are bound by its holding. See United States v. Barbour, 395 F.3d 826, 828 (8th Cir. 2005)(Bright, J., and Melloy J., concurring),citing Leocal v. Ashcroft, --- U.S. ---, 125 S.Ct. 377, 383 (2004);[3] United States v. Lindquist, supra at *5 (Heaney, J., concurring)("I restate my view that our circuit 'has far too broad a conception of what the guidelines mean by stating that violent crimes include "conduct that presents a

---

[3]In United States v. Barbour, 395 F.3d 826, 828 (8th Cir. 2005), the concurring opinion predicted the demise of the Court's holding, in United States v. Sun Bear, 307 F.3d 747, 752-53 (8th Cir. 2002), as follows:

> In light of the Supreme Court's recent opinion in Leocal v. Ashcroft, — U.S. —, 125 S.Ct. 377, 383, 160 L.Ed.2d 271 (2004), which clarified that for a crime to be a "crime of violence" or a "violent felony" the crime must involve active violence, the continued validity of Sun Bear and [United States v.] Sprouse[, 394 F.3d 578, 579 (8th Cir. 2005)] is now questionable.

Subsequently, the Court considered the impact of Leocal on the holding in Sun Bear and concluded that Leocal was inapposite as it related to the provisions of Title 18 U.S.C. §16, which "require[s] a risk that force 'be used,' a phrase that contemplate[s] an intentional resort to violence by the perpetrator," which is not required under U.S.S.G §4B1.2(a)(2) and, by Circuit precedent, see United States v. Nolan, 397 F.3d 665, 666 (8th Cir. 2005), pet. for cert. filed (U.S., June 30, 2005), under Title 18 U.S.C. §924(e). Accordingly, we have no basis to project the reversal of Sun Bear, or to ignore or disregard its holding.

serious potential risk of physical injury to another.”’”), quoting United States v. Mohr, 407 F.3d 898, 904 (8th Cir. 2005), quoting in turn, USSG §4B1.2(a)(2).[4]

Lastly, in recommending the denial of the Defendant’s Motion to Dismiss, without prejudice to its renewal before the District Court, we sacrifice no economy, as the Defendant’s Trial will continue to be focused on his charge of being a felon in possession of a firearm, in violation of Title 18 U.S.C. §924(g)(1), which is the only charge requiring a Jury’s resolution. As a consequence, even if we were, in our view impermissibly, to recommend the grant of the Defendant’s premature Motion, his Trial would not be any shorter, and we would be doing so on less than an informed basis. Accordingly, we recommend that the Defendant’s Motion be denied, but without prejudice to its renewal at the time of sentencing if a guilty Verdict is returned by the Jury.

---

[4]Similarly, the Defendant’s other convictions have also been held, in this Circuit, as constituting “violent felonies” for purposes of Section 924(e)(1). See, United States v. Davis, 936 F.2d 352, 356 , cert. denied, 503 U.S. 908 (terroristic threats); United States v. Childs, 403 F.3d 970, 972 (8th Cir. 2005), pet. for cert. filed (U.S., September 6, 2005)(escape), citing United States v. Abernathy, 277 F.3d 1048, 1051 (8th Cir. 2002). Moreover, we express no view as to the Defendant’s argument that his prior drug convictions do not constitute “serious drug offenses” under Section 924(e), as he has failed to present any evidence to substantiate his conclusory exemption of those offenses from such a designation.

b. Lack of Nexus With Interstate Commerce. Next, the Defendant seeks a dismissal of his Indictment on the ground that the Statute, under which he is charged, violates the Commerce Clause when applied to the wholly intrastate possession of a firearm that he claims to be the circumstance here. He urges us to reach that conclusion under a strained reading of the Supreme Court's Commerce Clause[5] jurisprudence, and particularly the Court's holding in United States v. Lopez, 514 U.S. 549 (1995). See also, United States v. Morrison, 529 U.S. 598 (2000), and Jones v. United States, 529 U.S. 848 (2000).

In the watershed decision of United States v. Lopez, supra, the Supreme Court held that Congress had exceeded its power, under the Commerce Clause, when it enacted the Gun Free School Zones Act of 1990.[6] The Court identified three categories of activities which are within Congress' power to regulate, including "the use of the channels of interstate commerce;" "the instrumentalities of interstate commerce, or the persons or things in interstate commerce;" as well as those activities

[5]The Commerce Clause provides that "Congress shall have power * * * to regulate commerce with foreign nations, and among the several states." United States Constitution, Article I, Section 8, Clause 3.

[6]The Act made it a Federal offense "'for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone.'" See, United States v. Lopez, 514 U.S. 549, 550 (1995), quoting Title 18 U.S.C. §922(g)(1)(a)(1988 ed. Supp. V).

which have a "substantial relation to interstate commerce." Id. at 558-59. The Court determined, however, that the Gun Free School Zones Act "neither regulate[d] a commercial activity nor contain[ed] a requirement that the possession be connected in any way to interstate commerce." Id. at 551.

After Lopez, the provisions of Section 992(g) have been challenged in this Circuit, under the Commerce Clause, with uniformly unsuccessful results. See United States v. Gary, 341 F.3d 829, 835 (8th Cir. 2003), cert. denied, 540 U.S. 1139 (2004) ("Recently, we upheld the constitutionality of §922(g)(1) against a Commerce Clause challenge."), citing United States v. Shepard, 284 F.3d 965, 969 (8th Cir. 2002); United States v. Bates, 77 F.3d 1101, 1103-04 (8th Cir. 1996), cert. denied, 519 U.S. 884 (1996); United States v. Shelton, 66 F.3d 991, 992 (8th Cir. 1995), cert. denied, 517 U.S. 1125 (1996). We are not empowered to ignore, or disregard, such precedential authority, and the Defendant offers no cogent basis upon which to do so.

As the Court explained, in Lopez:

> First, we have upheld a wide variety of congressional Acts regulating intrastate economic activity where we have concluded that the activity substantially affected interstate commerce. Examples include the regulation of intrastate coal mining; Hodel [v. Virginia Surfacing Mining and Reclamation Assn., Inc., 452 U.S. 264 (1981)], intrastate extortionate credit transactions, Perez [v. United States, 402 U.S. 146 (1971)], restaurants utilizing substantial interstate

> supplies, [Katzenbach v.] McClung, [379 U.S. 294 (1964)], inns and hotels catering to interstate guests, Heart of Atlanta Motel [v. United States, 379 U.S. 241 (1964)], and production and consumption of homegrown wheat, Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). These examples are by no means exhaustive, but the pattern is clear. Where economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained.

United States v. Lopez, supra at 559-60.

The Defendant's possession of a firearm, which was used or transported in commerce, plainly affects interstate commerce, and therefore, Congress has properly exercised its power, under the Commerce Clause, to regulate such conduct. Id. Thus, we find that his argument, under the Commerce Clause, to be without merit, and we recommend that his Motion to Dismiss the Indictment be denied.

B. The Motion to Suppress Statements.

1. Standard of Review. Government agents are not required to administer Miranda warnings to everyone they question. See, Oregon v. Mathiason, 429 U.S. 492, 495 (1977). Rather, Miranda warnings are required for official interrogations where a person has been "'taken into custody or otherwise deprived of his freedom of action in any significant way.'" Stansbury v. California, 511 U.S. 318, 322 (1994), quoting Miranda v. Arizona, supra at 444; United States v. Helmel, 769 F.2d 1306, 1320 (8th Cir. 1985); Berkemer v. McCarty, 468 U.S. 420, 428-29 (1984).

Once a suspect is in police custody and subject to interrogation, the suspect must be informed of his constitutional right to remain silent, and to be represented by legal counsel during questioning. See, Miranda v. Arizona, supra at 473; see also, Dormire v. Wilkinson, 249 F.3d 801, 804 (8th Cir. 2001). "The right to counsel recognized in Miranda is sufficiently important to suspects in criminal investigations, * * * that it 'requir[es] the special protection of the knowing and intelligent waiver standard.'" Davis v. United States, 512 U.S. 452, 458 (1994); see also, United States v. Ortiz, 315 F.3d 873, 885 (8th Cir. 2002). Nevertheless, "[i]f the suspect effectively waives his right to counsel after receiving the Miranda warnings, law enforcement officers are free to question him." Id., citing North Carolina v. Butler, 441 U.S. 369, 372-376 (1979); see also, United States v. Jones, 23 F.3d 1307, 1313 (8th Cir. 1994).

A suspect's waiver of his Miranda rights is valid if it is knowing, intelligent, and voluntary. Miranda v. Arizona, supra at 444. Determining the validity of a waiver, under that standard, requires two separate analyses. United States v. Turner, 157 F.3d 552, (8th Cir. 1998), citing Colorado v. Spring,479 U.S. 564, 573 (1987). As our Court of Appeals has explained:

> The inquiry [into the validity of a waiver] has two distinct dimensions * * *. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than

> intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

United States v. Jones, supra, 1313 (8th Cir. 1994), quoting Moran v. Burbine, 475 U.S. 412, 421 (1986), quoting, in turn, Fare v. Michael C., 442 U.S. 707, 729 (1979); see also, Colorado v. Spring, supra at 573; United States v. Ortiz, supra at 885; United States v. Syslo, 303 F.3d 860, 865 (8th Cir. 2002); Owens v. Bowersox, 290 F.3d 960, 964 (8th Cir. 2002); United States v. Boyd, 180 F.3d 967, 977 (8th Cir. 1999).

The burden rests with the Government to make those showings by a preponderance of the evidence. See, Colorado v. Connelly, 479 U.S. 157, 168 (1986); Holman v. Kemna, 212 F.3d 413, 420 (8th Cir. 2000), cert. denied, 531 U.S. 1021 (2000); United States v. Barahona, 990 F.2d 412, 418 (8th Cir. 1993).

A confession will be voluntary, under the "totality of the circumstances" test, so long as the will of the suspect had not been overborne at the time that it was made. United States v. Jones, supra at 1313. Factors considered in making that determination include "the background, experience, and conduct of the accused." United States v. Barahona, supra at 418; see also, Ferguson v. Bruton, 217 F.3d 983, 985 (8th Cir. 2000); United States v. Boyd, supra at 977. Such personal factors are considered in relation to the conduct of the interrogating officers. United States v.

Jones, supra at 1313; Smith v. Bowersox, 311 F.3d 915, 922 (8th Cir. 2002). A waiver and subsequent statement will be voluntary if the analysis reveals that they were "the result of a free and deliberate choice rather than intimidation, coercion, or deception." United States v. Barahona, supra at 418. Coercive police conduct, therefore, is a "necessary predicate" to render a confession involuntary. Colorado v. Connelly, supra at 167; see Holman v. Kemna, supra at 421. The purpose in considering the "background, experience, and conduct of the accused," is to determine the "capacity of the suspect to resist pressure to confess." United States v. Jones, supra at 1313, quoting United States v. McClinton, 982 F.2d 278, 282 (8th Cir. 1992).

For understandable reasons, the Courts have recognized that pressures may be brought to bear upon an accused which have overborne his will, and have caused him to confess. See, Michigan v. Mosley, 423 U.S. 96, 105-06 (1975). However, not all pressure tactics used in interrogation prevent an accused person from voluntarily waiving his rights. United States v. Astello, 241 F.3d 965, 967 (8th Cir. 2001) ("Numerous cases have held that questioning tactics such as a raised voice, deception, or a sympathetic attitude on the part of the interrogator will not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne."). Only those interrogative techniques that cause the will of the

accused to be overborne will be found sufficiently oppressive to render a confession involuntary. United States v. Martin, 369 F.3d 1046, 1055-1056 (8th Cir. 2004), citing United States v. Santos-Garcia, 313 F.3d 1073, 1079 (8th Cir. 2002).

Even if voluntary, a Miranda waiver will not be valid unless it was knowingly and intelligently made. United States v. Turner, supra at 555 (choosing to address a defendant's claim that his Miranda waiver was not knowing and intelligent after first concluding that his confession was voluntary). A waiver will be knowing and intelligent if, based on the "totality of the circumstances," the suspect's decision to waive his rights is made "with full awareness and comprehension of all the information Miranda requires the police to convey." Moran v. Burbine, supra at 424.

2. Legal Analysis. The Record reflects that Traurig did not elicit any statements from the Defendant until the Defendant persisted in his decision to tell Traurig "the real story." Traurig immediately advised the Defendant of his Miranda rights before listening to the "whole story"; the Defendant stated that he understood those rights; and the Defendant agreed to waive those rights after they were explained to him. Moreover, the Defendant never invoked his right to an attorney, or otherwise so much as intimated that he was not willing to provide a statement. His answers to

Traurig's questions were coherent and responsive and, in Traurig's view, he was not under the influence of any drugs or alcohol, and he did nothing to suggest that he was.

Further, the Record does not demonstrate that the interrogation techniques, which were employed by Traurig, were so heavy-handed, as to render the Defendant's waiver involuntary. Accordingly, we find, and conclude, that the Defendant's election to waive his Miranda rights, and to speak with Traurig, was knowing, intelligent, and voluntary, and we recommend that his Motion to Suppress statements be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

1. That the Defendant's Motion to Dismiss Indictment: Insufficient Predicate Convictions [Docket No. 34] be denied.

2. That the Defendant's Motion to Dismiss Indictment: Lack of Nexus with Interstate Commerce [Docket No. 32] be denied.

3. That the Defendant's Motion to Suppress Statements, Admissions, and Answers [Docket No. 29] be denied.

Dated: September 27, 2005

s/Raymond L. Erickson

Raymond L. Erickson
CHIEF U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than October 13, 2005**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than October 13, 2005**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.